# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PRINGLE,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>D.L. RUNNELS, et al.,<br><br>　　　　　　　Defendants. | CASE NO. 07cv1960-LAB (POR)<br><br>**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION, AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On the evening of January 10, 1984, a woman leaving a store was forced into her vehicle by two men, robbed, driven to a dark residential area where she was raped, and later released near her home. A witness, Darren Wells, saw the victim abducted from the store parking lot and called police to report it. Frederick Daye was arrested and identified by the victim, and Petitioner David Pringle was identified three months later by Wells as one of the attackers. At separate trials for car theft, kidnaping, and rape, both Daye and Pringle were convicted. Pringle was convicted on August 17, 1984 and he was sentenced to an indeterminate term of life imprisonment with the possibility of parole. His conviction was affirmed on January 8, 1986. Pringle filed his petition for writ of habeas corpus in this Court on October 9, 2007. With the assistance of counsel, he filed his third amended petition on January 9, 2009.

///

Pursuant to Fed. R. Civ. P. 72 and 28 U.C.C. § 636, the petition was referred to Magistrate Judge Louisa Porter for a report and recommendation. Judge Porter issued her report and recommendation (the "R&R") on June 22, 2010. After some delay caused by a change in Pringle's counsel and Pringle's attempt to file objections he drafted himself, Pringle's counsel filed objections with Pringle's own objections attached as an exhibit.

**I.     Legal Standards**

A district judge "may accept, reject, or modify the recommended decision" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Rule 72(b); *see* 28 U.S.C. § 636(b)(1). The district judge may also receive further evidence; or return the matter to the magistrate judge with instructions. *Id*. A party objecting to the recommended disposition of the matter may "serve and file specific written objections to the proposed findings and recommendations," and "a party may respond to another party's objections. . . ." Rule 72(b).

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Rule 72(b). When no objections are filed, the court may assume the correctness of the magistrate judge's findings of fact and decide the issues on the applicable law. *Campbell v. United States Dist. Court*, 501 F.2d 196, 209 (9th Cir. 1974).

**II.    Discussion**

The facts and procedural history are set forth in the R&R and the Court does not repeat them here except where necessary for discussion.

**A.     Objections**

Pringle objects that the type of claim he is bringing is not subject to procedural bars such as AEDPA's limitations period, or that even if it is, he is entitled to tolling. Pringle waited over 20 years from his conviction to begin exhausting his claim, but argues that he could not reasonably have brought it earlier because it is based on newly-discovered evidence he first learned about in October, 2005.

/ / /

The R&R concluded that Pringle's petition was time-barred under AEDPA because he first began attempting to exhaust his claims in state court on February 15, 2006, approximately 20 years after his conviction became final. The R&R rejected his argument that claims of actual innocence were subject to the one-year limitations period. After the R&R was issued, the Ninth Circuit issued its decision in *Lee v. Lampert*, 610 F.3d 1125, 1128–31 (9th Cir. 2010), holding a claim of actual innocence was not a gateway through which otherwise time-barred claims could be brought, which appeared to confirm the R&R's conclusions.

In his objections, Pringle argues *Lampert* only applies to claims of actual innocence brought under *Schlup v. Delo*, 513 U.S. 298 (1995), which he now abandons. Instead, he argues he is bringing a stand-alone "actual innocence" claim under *Herrera v. Collins*, 506 U.S. 390 (1993). The R&R recognized this possibility and addressed whether Pringle could succeed with a *Herrera*-type claim.

Pringle argues the Constitution doesn't permit any type of procedural bar to a *Herrera*-type claim of actual innocence in a habeas petition, but this is erroneous. Recently, in *Souliotes v. Evans*, 622 F.3d 1173 (9th Cir. 2010), a non-capital case, the Ninth Circuit rejected a petitioner's claims of constitutional error, but remanded his stand-alone claim to the trial court with instructions to determine whether the petitioner could with due diligence have uncovered the evidence he says proves his innocence. If he could reasonably have uncovered the evidence earlier, his claim would be time-barred. *Id*. at 1175, 1177–80 ("[W]e hold that § 2244(d)(1)(D) . . . applies to Souliotes' innocence claim . . . .")

As Pringle admits, a stand-alone claim is more difficult to establish than a *Schlup*-type claim. Assuming such a claim to be possible, the standard would be "extraordinarily high," and a petitioner must demonstrate that he is probably innocent. *Carriger v. Stewart*, 132 F.3d 463, 476–77 (9th Cir. 1997) (en banc). A petitioner cannot succeed merely by casting doubt on the evidence that convicted him. *Id*.

As pointed out in *Souliotes*' dissent, it is doubtful whether *Herrera* actually permits habeas petitioners to bring stand-alone claims of actual innocence in non-capital cases. 622

1  F.3d at 1182–83 (noting that two other circuits had found such claims were precluded by
2  *Herrera* and criticizing the majority for remanding the case without deciding the issue).

3       The R&R also discusses this at length based on earlier cases. Based on the earlier
4  cases, the R&R concluded that a freestanding claim of actual innocence constitutes a
5  cognizable constitutional claim and can serve as the basis for a federal grant of habeas.
6  (R&R, 13:26–28.) The Court, however, is not so sanguine. In light of the dissent's
7  comments in *Souliotes* and two other circuits' disagreement, the Court declines to make this
8  holding. Furthermore, such a holding is unnecessary because it is clear Pringle's claim is
9  time-barred and fails to meet the high *Herrera* standard in any event.

    **B.**    **Timeliness**

         **1.**    **Events Before October, 2005**

12       The newly-discovered evidence consists of four semen stains found at the scene of
13  the crime. Daye was able to have these tested in 1994. They were tested by a private
14  laboratory, and later by the government. On the basis of the government's testing, Daye was
15  excluded as a source of the semen, though Pringle was not. As a result, the government
16  decided not to oppose his habeas petition and Daye was exonerated and released. The
17  results of the second round of DNA testing were given to Pringle's trial attorney. In June,
18  2005, Pringle wrote to his attorney and asked for his case file. According to Pringle, he
19  received it some time in October, 2005. Then in February, 2006, Pringle filed his first
20  habeas petition in California superior court. The superior court denied the petition on April
21  5, 2006.

22       Pringle argues that he couldn't have brought his petition until October, 2005 when he
23  actually received the government's DNA analysis. While the R&R accepted this argument,
24  and Respondent didn't object to it, the Court cannot accept this finding.

25       The state courts found Pringle had failed to explain the fourteen-year delay in bringing
26  claims based on the government's DNA analysis. (Cal. Superior Court's order of April 5,
27  / / /
28  / / /

2006 (Lodgment 11) at 3:13–15.)[1] There is no showing this is an unreasonable finding, even assuming Pringle submitted the same evidence he submitted here. The operative date is not the date when Pringle actually received the new evidence or when he realizes its significance, but the earliest date he could, with due diligence, have discovered it. 28 U.S.C. § 2244(d)(1)(D); *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001). Due or reasonable diligence doesn't mean maximum diligence, nor is a petitioner required to look for evidence he has no reason to know about. *Souliotes*, 622 F.3d at 1178. But the word "diligence" implies activity, not passivity, so that if a petitioner has reason to believe evidence exists that would support a habeas claim, he should take appropriate steps to seek it out rather than ignoring the possibility or waiting for it to come to him.

For purposes of showing the eyewitness testimony was unreliable, the first notice Pringle had was Daye's exoneration. Accepting Pringle's version of the evidence as true, the eyewitness evidence was the lynchpin of the government's case. (*See* Mem. in Supp. of Mot. to file Third Am. Pet., 10:3–5 ("Indeed, by releasing Daye, the Government has no choice but to release Pringle as well. As the Government made clear at both of their trials, Pringle['s] and Daye's fate[s] are tied together.")) As soon as Pringle found out Daye had been exonerated, he should have known that the eyewitness testimony that identified both Daye and himself as the assailants had been cast into doubt. He needn't have known precisely what form the exonerating evidence took in order to be on notice that it existed.

Pringle says he later received the DNA evidence that cleared Daye. But § 2244(d)(1)(D)'s limitations period doesn't begin to run from the date a petitioner is on

---

[1] The parties haven't provided a copy of the California Supreme Court's order denying Pringle's habeas petition, which was decided after he filed his petition in this Court. But Pringle's briefing implies the Supreme Court either didn't rule on this, or ruled against him. While he points out the superior court's finding of unreasonable delay, he omits the Supreme Court's findings (if any). (Obj. to R&R, 8:22–9:2; Trav., 9:11–17.) In conducting its habeas review, the Court must accept all factual findings made by a state court, unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Because the Supreme Court made its finding, if any, after Pringle had already filed his petition here, it is unclear what preclusive effect that court's finding should have. But in any event, if the state supreme court rejected the superior court's finding that there was no explanation for the 14-year delay, Pringle should and would have documented this. If the Supreme Court accepted that finding, Pringle was required to provide "clear and convincing" evidence it was wrong.

1 notice of the last piece of evidence he is relying on. This is particularly true here, where that last piece of evidence, the government's DNA analysis, incriminates the petitioner.

Pringle's declaration shows he knew about Daye's habeas petition. Though Pringle argues otherwise (Mem. in Supp. of Mot. for Leave to File Third Am. Pet., 13:27–14:1), he also apparently knew new DNA analysis was being undertaken in that case because an earlier round of DNA testing had suggested Daye was not involved. (Decl. of James Atkins (Lodgment 4) (discussing first round of DNA testing, followed by visit to Pringle in prison to obtain a DNA specimen)). And after the new DNA analysis became available, Pringle's trial attorney had it for over a decade.[2] Pringle doesn't say when he learned Daye had been released. But assuming Pringle is innocent as he claims, it is strange that he would not at least wonder whether his declaration or the new DNA analysis had cleared Daye, and whether the DNA evidence might clear him too. And knowing that such analysis was possible, he should have sought it in his own case. *Compare Souliotes*, 622 F.3d at 1178–79 (holding that earliest date petitioner could reasonably have discovered that chemicals on his shoes didn't match those found at the crime scene was the date when he could reasonably have learned of new analysis available).

Pringle doesn't say when he learned of Daye's exoneration, but his attorney knew about it in 1996 at the latest. (Original Pet., Ex. A (letter from Pringle's attorney dated January 5, 1996, mentioning Daye's successful habeas petition and release from prison, and soliciting letters of appreciation to be used at Pringle's parole hearing)). He could also have learned about it had he written to Daye or the deputy district attorney. Pringle also doesn't say whether he knew about the new DNA testing results, only saying he "did not personally receive any of this information." (Mem. in Supp. of Mot. to File 3d Am. Pet., 9:4; Obj. to R&R, 9:14.) As with Daye's exoneration, he could have learned about it earlier, had he inquired. And in fact he never alleges he didn't learn about either of these things earlier. He

///

---

[2] It is not particularly surprising that Pringle's attorney didn't turn over the results to him, since they tend to identify him and Smallwood as the two assailants, fully consistent with his sworn confession.

says he "fortuitously wrote his attorney asking for his case file" in 2005, but offers no explanation why he wanted it then.

In short, Pringle's evidence falls far short of the "clear and convincing" standard. Although Respondents didn't object to the R&R's finding that Pringle with due diligence couldn't have discovered the exculpatory evidence earlier than October, 2005, untimeliness was raised as a defense, and the Court is not free to reject the state court's reasonable factual findings. 28 U.S.C. § 2254(d)(2). *See also Frantz v. Hazey*, 533 F.3d 724, 735–36 (9th Cir. 2008) (explaining that § 2254(d) is a limitation on federal courts' power to grant habeas relief). For this reason, though it is not the only reason, the petition must be denied as untimely.

### 2.     Events After October, 2005

AEDPA's 1-year limitations period is tolled for the time during which a properly filed state habeas petition is pending. 28 U.S.C. § 2244(d)(2). In California, habeas petitions can be filed in the superior court, the court of appeals, and the state supreme court. *Gaston v. Palmer*, 417 F.3d 1030, 1041 (9th Cir. 2005). A petitioner is entitled to "gap tolling" or "interval tolling" for the time between filing at each level, but only if the delay between denial of petition at one level and filing of a petition at the next level is reasonable. *Id*. at 1042.

Assuming, *arguendo*, that the limitations period didn't begin to run until Pringle received the DNA test results, over three and a half months elapsed from the time he received the results until he filed his first petition in state court on February 15, 2006. Then from April 5, 2006, when that petition was denied, until August 1, 2007, when he filed his petition in the California Supreme Court, Pringle had no petitions pending. The R&R points out he makes no showing of any other basis for tolling during this 16-month period, and Pringle hasn't objected to this finding. A 16-month delay is clearly unreasonable and prevents Pringle from benefitting from gap tolling. *See, e.g., Banjo v. Ayers*, 614 F.3d 964, 969 (9th Cir. 2010) (holding that a petitioner's delay of 146 days between filing of petitions was "plainly" unreasonable).

/ / /

Even indulging all factual and legal assumptions in Pringle's favor, he filed his petition in this Court over seven months after AEDPA's 1-year limitations period had run. This delay also requires that his petition be denied.

### C. *Herrera* Standard

Even assuming that a stand-alone "actual innocence" claim is available to Pringle, he would be required to show that he is probably innocent. Here, the DNA testing doesn't exclude Pringle, and may even inculpate him.

Pringle presented alibi evidence consisting of his own testimony and the testimony of a woman he was with that he was elsewhere at the time of the attack.[3] Both the victim and Wells identified both Day and Pringle as the assailants. Daye's exoneration casts doubt on the reliability of these identifications, though. As the R&R points out, Pringle might be able to succeed if he were proceeding under the more lenient *Schlup* standard. But here he is proceeding under the "extraordinarily high" *Herrera* standard. He must therefore "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger*, 132 F.3d at 476 (citations omitted).

Furthermore, Pringle formally confessed at least four times since 1990. The first of these was a confession in a declaration under penalty of perjury in support of Daye's petition, in which Pringle said he (Pringle) and another man, Eddie Smallwood, committed the theft, kidnaping, and rape. Pringle's own trial attorney asked him to provide this confession in 1993. In a handwritten note appended to the formal confession, he apologized for waiting so long to confess, explaining that because Daye was tried separately he hadn't realized Daye had been convicted. He later confirmed this confession in an interview with a deputy district attorney who was investigating Daye's petition. In his pleadings, Pringle admits he made this confession, but downplays its reliability, arguing that he gave it simply to help Daye, figuring he himself had nothing to lose. (Obj. to R&R, 8:8:12–13 ("Pringle,

///

---

[3] Although Pringle argues many witnesses testified he was at a party, they agreed he left at 5:00 p.m. Only one witness, Ethel Gonzalez, testified she was with Pringle at 7:00, when the attack took place.

figuring he had nothing to lose, signed the statement.")) Pringle also confessed on two other occasions, in connection with his own parole consideration hearings.

Pringle's alibi evidence is the sole evidence in his favor. The evidence is not necessarily reliable,[4] but for purposes of this order the Court will assume its credibility. As the R&R noted, both the victim's and Wells' eyewitness testimony may be less reliable because of their misidentification of Daye. But casting doubt on this evidence would merely neutralize it, not cause it to weigh affirmatively in Pringle's favor. Because the DNA testing of one stain is consistent with Pringle's DNA, it tends to incriminate him.[5] This forms the main body of evidence, and taken together it might support a claim of innocence under *Schlup*, but falls short of showing Pringle is probably innocent and does not meet *Herrera*'s "extraordinarily high" standard.

While the confessions arose later and didn't form part of the record, it is appropriate to consider all newly-discovered evidence the parties have submitted, not just the newly-discovered evidence that favors Pringle's arguments. *See Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (requiring petitioner to show "that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'") (quoting *Schlup*, 513 U.S. at 327).

The R&R, citing *Schriro v. Landrigan*, concluded that the Court couldn't consider the confessions for any purpose without giving Pringle an evidentiary hearing at which he could explain his motives for making them. *See* 550 U.S. 465, 474 (2007) ("In deciding whether

---

[4] The state court of appeals noted inconsistencies in the alibi testimony of Pringle and his principal alibi witness Ethel Gonzalez. For example, Pringle first told police he was in Fresno on January 10, the day of the attack. (Cal. Court of Appeal's Order of Jan. 8, 1986 (Lodgment 2) at 3, 13.) Then when his mother said he had returned from Fresno on January 4, he changed his story, saying he and Gonzalez had been at a party and then had drive around the San Diego area on a number of errands when the attack was taking place. *Id*. at 3–4. The credibility of this evidence is discussed in some detail. *Id*. at 3–5.

[5] The government's DNA analysis shows the specimen would be consistent with 1 in 2,000 African-Americans, and excluded Daye and Smallwood as possible sources. The analysis Smallwood could be the source of a different stain, and excludes both Daye and Pringle. The DNA in the second specimen would be consistent with 1 in 2,300 African-Americans. This DNA analysis tends to corroborate Pringle's confession, identifying himself and Smallwood as the assailants. The earlier testing was inconclusive, and the two remaining stains weren't tested. Inconclusiveness or absence of testing, though, isn't exculpatory and therefore doesn't weigh in favor of innocence.

to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.") The R&R explained that it was considering Pringle's claim under the more lenient *Schlup* standard, and Pringle has now clarified he is bringing only a *Herrera*-type claim. But *Schriro* goes on to hold that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.

Here, the record refutes Pringle's allegations (in addition to showing his petition is untimely), so no hearing is necessary. Pringle's allegations attempt to explain his initial confession. But even accepting his explanation, the confession is still admissible even without an evidentiary hearing to examine why he made it.

First, he can't point to any motive for making a false confession.[6] And second, he made his confession under penalty of perjury. Pringle cannot create an issue requiring an evidentiary hearing simply by alleging that if put on the stand he intends to contradict his earlier declaration. *See Williams v. Woodford*, 384 F.3d 567, 590–91 (9th Cir. 2004) (holding that documentary evidence may obviate the need for an evidentiary hearing).

Pringle's confession also bears strong indicia of reliability because the government's DNA analysis tends to inculpate Smallwood as well. Pringle offers an explanation of why he chose to implicate Smallwood (whose DNA he now knows to be consistent with that of the second assailant):

> After Pringle had been convicted, Ethel Gonzalez had recalled that Smallwood had approached her shortly after the day [of the rape] and mentioned he had come across some jewelry. Gonzalez believed it might have been jewelry obtained from the . . . rape.

(Obj. to R&R, 8:13–16.) Apparently Pringle is arguing he had some idea Smallwood would

---

[6] Pringle's traverse, citing *Osborne v. Dist. Attorney's Office*, 521 F.3d 1118, 1140 (9th Cir.2008), *rev'd* 129 S.Ct. 2308, 2321 (2009), also argued that confessions Pringle made to obtain parole shouldn't be fatal to his claim of actual innocence, because a prisoner has an incentive to make a false confession to obtain his release through parole. (Trav., 3:10–14.) But that doesn't apply to Pringle's initial confession, because he made it to help Daye. Even now he can't allege any reasonable motive for this confession, nor does he offer any explanation for the spontaneous handwritten apology he added.

be a plausible person to accuse, based on the jewelry. But this if anything would show Pringle had even less incentive to make a false confession, because having committed the crime with one of the actual assailants would incriminate him further, while helping to exculpate Daye, a man he says was a total stranger to him. And, assuming Pringle to be innocent, he would have had no reason to know Daye was innocent too; even if he knew Smallwood was the second assailant, he didn't know the first one wasn't Daye.

Finally, as noted, Pringle spontaneously added an apology at the end of his confession, saying:

> I'm sorry it took me so long to do this. But I had no knowledge of Mr. Daye being convicted of the crime, he had nothing to do with. I hope this will help you out. Eddie Smallwood is the one who did this case.

This apology not only affirms the confession, but is inconsistent with Pringle's allegation about his motives for confessing. If Pringle had no involvement in the crimes beyond what he now alleges, nothing in his allegations shows any motive for the false spontaneous apology to Daye. On the other hand, if he was guilty and knew Daye wasn't, the apology makes perfect sense.

In short, even assuming a stand-alone claim of actual innocence is available to Pringle, he cannot meet the extraordinarily high standard. And on the basis of the pleadings and record, he is not entitled to an evidentiary hearing.

### III. Conclusion and Order

For these reasons, the Court concludes Pringle's petition in this Court is time-barred. The Court accepts the state court's determination that Pringle waited too long to file his petition after he could with reasonable diligence have discovered the new DNA evidence. And even if he couldn't with reasonable diligence have discovered the DNA evidence earlier than October, 2005, his petition is still late by seven months. Finally, even if he were given an evidentiary hearing, he cannot show he is probably innocent. The remaining objections do not affect the outcome.

/ / /

/ / /

Pringle's objections to the R&R are therefore **OVERRULED**. The R&R is, however, **MODIFIED** as noted above, and **ADOPTED**. The petition is **DENIED**.

**IT IS SO ORDERED**.

DATED: January 12, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge