# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| DAVID PRINGLE, | CASE NO. 07cv1960-LAB (POR) |
|---|---|
| Petitioner, | **ORDER DENYING CERTIFICATE OF APPEALABILITY** |
| vs. | |
| D.L. RUNNELS, et al., | |
| Respondents. | |

David Pringle, a prisoner represented by appointed counsel, filed his petition for writ of habeas corpus in this Court on October 9, 2007. On June 22, 2010, Magistrate Judge Louisa Porter issued her report and recommendation (the "R&R") recommending that Pringle's petition for habeas corpus be denied. After Pringle filed objections to the R&R, the Court on January 13, 2011 issued an order modifying the R&R, adopting it, and denying the writ.

Pringle now appeals, and petitions for a certificate of appealability (COA). He agrees his sole claim is brought under a theory of actual innocence under *Herrera v. Collins*, 506 U.S. 390 (1993), but disagrees with the Court's holding that his petition was time-barred, that he did not demonstrate actual innocence, or that he could not show actual innocence even if given an evidentiary hearing.

///

Before the Court can issue a COA, Pringle "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)) (alterations omitted). Had the Court denied the petition purely on procedural grounds, it would be required to engage in a two-part inquiry, considering first whether jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and second whether jurists of reason would find it debatable that the Court was correct in its reasoning. *Id*. at 1026 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because the Court also relied on a substantive basis to deny the writ, it isn't required to undertake the two-part inquiry, but in the interests of completeness the Court will do so. Pringle must show the COA should issue, but doubt about whether the standard is met will be resolved in his favor. *Lambright,* 220 F.3d at 1025.

**Merits of *Herrera* Claim**

After the R&R was issued, the Ninth Circuit issued its decision in *Lee v. Lampert*, 610 F.3d 1125, 1128–31 (9th Cir. 2010), holding a claim of actual innocence was not a gateway through which otherwise time-barred claims could be brought. In his objections to the R&R and in his notice of appeal, Pringle abandoned all claims except a stand-alone *Herrera* claim of actual innocence. In light of *Lee*, he specifically disclaimed any reliance on *Schlup v. Delo*, 513 U.S. 298 (1995) and argued he was bringing a stand-alone claim of actual innocence based on what he described as newly-discovered evidence, which he believed was recognized in *Herrera*. (Obj. to R&R, 14:16–26.)

Assuming, *arguendo*, a claim of actual innocence in a non-capital case is possible under *Herrera*, the standard would be "extraordinarily high," and a petitioner must demonstrate that he is probably innocent. *Carriger v. Stewart*, 132 F.3d 463, 476–77 (9th Cir. 1997) (en banc). The Supreme Court has also recently described this standard as requiring a showing that "evidence that could not have been obtained at the time of trial clearly establishes [the] petitioner's innocence." *In re Davis*, 130 S.Ct. 1, 1 (2009). A

petitioner cannot succeed merely by casting doubt on the evidence that convicted him. *Carriger* at 466–67. In determining whether a petition successfully states an actual innocence claim, the Court looks at all evidence, including all new evidence. *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 327).

Pringle argues his *Herrera* claim is viable in spite of his multiple confessions, including one made in writing, voluntarily, at the suggestion of his own attorney, and under penalty of perjury. That confession named Eddie Smallwood as Pringle's accomplice in the rape, kidnaping, and robbery for which Pringle is now incarcerated. At the end of the typewritten confession, below his signature, Pringle apparently spontaneously hand-wrote a note, confirming his confession and apologizing to the other defendant that he hadn't made it sooner. The confession prompted an investigation which cleared the man who had been convicted as Pringle's accomplice, resulting in that man's release. But DNA evidence obtained during the investigation tended to incriminate both Pringle and Smallwood.[1] Pringle later confirmed his written testimony to a deputy district attorney, who was conducting an investigation of the other defendant's guilt.

In his briefing, Pringle's counsel hinted, but never directly alleged, that Pringle was prepared to appear at a hearing and testify that his earlier confessions were lies. Although Pringle sought an opportunity to explain why he had made the confessions, he never said what those explanations would be, except to say that he signed the declaration "figuring he had nothing to lose." Even if this were an explanation for signing the confession, it doesn't explain why he hand-wrote the annotation after his signature, reaffirming the typed confession he had sworn to. Pringle also suggests, but studiously avoids alleging, he didn't confess to the deputy district attorney. Instead, he calls the attorney's affidavit "supposed

---

[1] Pringle's theory is that because the DNA evidence cleared the other defendant, it shows the eyewitness testimony identifying both men as the assailants was unreliable. The DNA test Pringle proposes to rely on shows DNA from two specimens taken from the crime scene would be consistent with Pringle's and Smallwood's DNA, respectively. DNA markers in one specimen are consistent with Pringle's DNA and would be consistent with less than 1 in 2,000 African-American men. The statistics for the specimen matched to Smallwood are approximately the same. The other specimens were either not tested or yielded inconclusive results. The state superior court explained that inconclusive DNA results didn't exonerate Pringle—an observation this Court agrees with.

evidence," claims he has never "had a chance to explain what was said," and argues "[t]hat can be explored at an evidentiary hearing." (Traverse, 3:9–10.)

The Court denied an evidentiary hearing. The Court agreed the eyewitness testimony identifying Pringle and the other defendant as the assailants was called into doubt later when the other defendant was cleared, but this doesn't tend to show Pringle himself was innocent. The only evidence in favor of Pringle's actual innocence was alibi testimony offered at trial and called into doubt by the prosecution's evidence. Even assuming a hearing were held and the Court found all the confessions were false, the DNA evidence and Pringle's prescient ability to identify Smallwood, whose DNA was consistent with the DNA of the other attacker,[2] would prevent him from meeting *Herrera*'s "extraordinarily high" standard of showing he was probably innocent. Nor would the alibi testimony be sufficient to "clearly establish[ ]" his innocence. *See Davis*, 130 S.Ct. at 1.

In his application for a COA, Pringle argues that "if a jurist found Mr. Pringle's explanation of his purported confessions credible, there would no longer be any affirmative, reliable evidence of his guilt . . . ." (Application for COA, 3:13–15.) This argument is both false and misleading. First, Pringle proffered no reasonable explanation for the first of the two confessions the Court principally relied on, and none at all for the second. If there were an explanation for the confessions, Pringle knows what it is. If there were an explanation, he could have alleged it in the briefing instead of cagily withholding it, dangling only the possibility that something might turn up at the hearing.[3] Second, he didn't dispute making

---

[2] In his briefing, Pringle proffered an explanation for how he decided to identify Smallwood as the other attacker in his confessions. At some unidentified time after his conviction, Pringle says his alibi witness remembered she had heard Smallwood talk about some jewelry he obtained, and for reasons the briefing doesn't explain she thought it might have been stolen during the rape, kidnaping and robbery. (Obj. to R&R, 8:13–16.)

[3] The R&R, in ruling on Pringle's *Schulp* claim, determined the confessions couldn't be considered for any purpose unless Pringle was given an evidentiary hearing at which he could explain his motivations for making the confessions. (R&R, 16:9–20.) To the extent this would be relevant to Pringle's *Herrera* claim with its higher standard, the Court rejects it as unreasonable. The R&R correctly noted that the Court must accept a petitioner's factual allegations when determining whether an evidentiary hearing is warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). But here, Pringle has studiously avoided making allegations. Instead, he has simply questioned the truth of Respondents' evidence and argued that a hearing should be held to explore the facts. An evidentiary hearing is not required in order to explore things a petitioner might have alleged but hasn't. This is

the confessions,[4] but only sought to explain them; thus, they are actual confessions, not purported confessions. Third, as noted, there <u>is</u> other reliable evidence of Pringle's guilt.[5]

**Timeliness**

Under Ninth Circuit precedent, claims of actual innocence based on newly-discovered evidence are subject to AEDPA's one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). *Souliotes v. Evans*, 622 F.3d 1173, 1177 (9th Cir. 2010); *see also id.* at 1181–82 (dismissing all other claims, but remanding petitioner's actual innocence claim for an evidentiary hearing to determine the triggering date under § 2244(d)(1)(D)).

The Court agreed with the R&R that the petition was time-barred. The Court, agreeing with the state court but disagreeing with the R&R, found Pringle waited many years after he uncovered evidence, or could reasonably have done so, before he filed a petition. Second, both the Court and the Magistrate Judge found that after Pringle admittedly had all the evidence he now relies on in his possession, he allowed AEDPA's limitations period to expire before filing his petition in this Court.

Pringle's counsel mischaracterizes the record when he claims the Court in its order disagreed with Magistrate Judge Porter in her R&R that the petition was <u>timely</u>:

---

particularly true where, as here, the facts (if they exist) would be readily known to the petitioner. *See Turner v. Hall*, 279 Fed.Appx. 507, 508–09 (9th Cir. 2008); *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (holding that habeas is not "meant to be a fishing expedition"). Furthermore, *Schriro* holds that "if the record refutes the applicant's factual allegations . . . , a district court is not required to hold an evidentiary hearing." *See also Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (holding that illogical assertions contradicting the record do not require an evidentiary hearing). Under *Schriro*, if Pringle had some reasonable basis for challenging the record, he could and should have said what that basis was. Otherwise, the Court can rely on the record.

[4] Pringle admitted signing the declaration. And the closest he came to challenging his confession to the deputy district attorney is to ask for the chance to cross-examine the witness and to allege he never "had a chance to explain what was said." (Traverse, 3:8–12.) He neither denied making this confession, nor argued it was (or is now being) misinterpreted, nor offered any other explanation that could be explored at a hearing. Furthermore, the confession in part led to an investigation culminating in the state's releasing the other defendant, which suggests both that it was reliable and that the state believed it.

[5] The record disclosed other circumstantial evidence as well that tended to show Pringle's guilt, and offered some support for the prosecution's argument that Pringle's alibi witness was lying. The Court's discussion focused on the most powerful evidence. But the fact that the other evidence offers less support for Pringle's guilt doesn't mean it is unreliable or that it can or should be ignored now. (*See, e.g.*, Lodgment 2 at 11 (relying on evidence of assailant's uncommon blood type as corroborating other prosecution evidence).)

> As to this Court's ruling on timeliness, given that this Court and the Magistrate Judge disagreed on the issue—as well as the relative dearth of case law on actual innocence claims under *Herrera*—plainly reasonable jurists could (and did) disagree and thus Mr. Pringle should be permitted to appeal this issue.

This is also false and misleading. The R&R specifically found the petition was <u>untimely</u> under AEDPA, unless saved by a *Schlup* "gateway" claim of actual innocence. *See* R&R, 6:19–7:22 ("Accordingly, these 482 days [between rounds of habeas review in state court] do not toll the statute of limitations, which renders the Petition untimely under the AEDPA.") The R&R then found the *Schlup* gateway <u>didn't</u> render the petition timely. And furthermore, Pringle has now abandoned his *Schlup* claim.

If *Souliotes* is followed, reasonable jurists would not find it debatable that Pringle's petition is time-barred. And thus far, no court has been inclined to allow otherwise time-barred stand-alone claims of actual innocence to be brought without regard to AEDPA's limitations period. Indeed, allowing such claims would effectively eliminate the limitations period without promoting justice. Actually innocent petitioners would have no reason to delay filing their petitions, but guilty would-be petitioners would have an incentive to sit on newly-discovered potentially exculpatory evidence while correspondingly inculpatory evidence is lost, memories fade, and witnesses disappear, before ambushing respondents with their stale claims. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 125 (2002) (citation omitted). It seems doubtful any court would be willing to open the floodgates, particularly in non-capital cases.

That said, three justices of the Supreme Court, in a concurrence in *Davis,* recently questioned whether § 2244(d)(1)(D)'s requirements applied, or applied with equal stringency, in stand-alone actual innocence claims. 130 S.Ct. at 1 (arguing that a district court "may conclude that § 2254(d)(1) does not apply, or does not apply with the same rigidity, to an original habeas petition . . .") (Stephens, J., joined by Ginsburg, J. and Breyer, J., concurring).[6] Although *Davis* is a capital case, the Ninth Circuit recently commented that,

---

[6] This argument also appears to question whether AEDPA is applicable at all to original petitions, citing *Felker v. Turpin*, 518 U.S. 651, 663 (1996) as having expressly left open the question of whether and to what extent AEDPA applies to original petitions. This apparently refers to § 2244(b)'s provisions concerning actual innocence claims. *Id*. In any

- 6 -                                                              07cv0960

if a stand-alone claim of actual innocence exists, *Herrera* suggests capital and non-capital cases should receive "equal treatment." *Osborne v. Dist. Attorney's Office*, 521 F.3d 1118, 1140 (9th Cir.2008), *rev'd on other grounds*, 129 S.Ct. 2308, 2321 (2009).

The Court therefore concludes that, even though it is contrary to this Circuit's precedents, reasonable jurists might find it debatable whether an untimely petition asserting actual innocence is time-barred under AEDPA.

**Other Substantive Bases for Denying the *Herrera* Claim**

Although the Court didn't rely on other bases for denying this claim, they are appropriately considered now, to determine whether reasonable jurists would find Pringle's *Herrera* claim debatable.

The Supreme Court explained in *Harrington* that, subject only to the exceptions in §§ 2254(d)(1) and (d)(2), claims "adjudicated on the merits" in state court can't be relitigated on habeas review. 2011 WL 148587 at *9. Pringle hasn't presented any evidence of what the California Supreme Court's decision was based on.[7] It is Pringle's burden to show that the California Supreme Court lacked any reasonable basis for denying relief, *id*., and this is clearly not met here.

Pringle can't show that the state courts' denial of his sole remaining claim was contrary to "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), because the Supreme Court has never held that a stand-alone claim of actual innocence is viable. *Souliotes*, 622 F.3d at 1182 n.3.

He also doesn't show the state court's "decison was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

---

case, even assuming the concurrence was questioning the applicability of AEDPA as a whole to original petitions, that is not in question at this point. *See, e.g., Harrington v. Richter*, ___ S.Ct. ___, 2011 WL 148587, slip op. at *5 (Jan. 19, 2011) (holding that failure to apply AEDPA's limitations to an original petition was "clear error").

[7] Respondents had been ordered to lodge "all records bearing on the merits of Petitioner's claims" (Order of March 18, 2008), and lodged only a copy of the docket showing his petition had been denied. Pringle didn't object to the sufficiency of this lodgment nor did he lodge a copy of the decision himself. A likely explanation is that the California Supreme Court's order didn't include reasons for denial. The record does include a copy of the California superior court's decision, though.

*See* § 2254(d)(2). He doesn't even cite or provide the California Supreme Court's decision, and this is fatal to his petition, under *Harrington*.

And even assuming, *arguendo*, the California Supreme Court did nothing more than adopt the superior court's statement of facts, Pringle hasn't shown even those were unreasonable. In the 1980s when Pringle originally appealed his conviction, the appellate court reviewed the trial record in detail, noted implausibilities in Pringle's alibi evidence, and found it was not improper for the prosecutor to point out to the jury it had repeatedly changed when cast into doubt. The superior court conducting habeas review relied on that decision, noting Pringle was presenting evidence the appellate court had already considered, and found the new evidence didn't exonerate him. Because the alibi evidence is the only affirmative evidence of Pringle's innocence, the prosecution's rebuttal evidence is highly relevant. But in his federal petition, Pringle has distorted some of the rebuttal evidence,[8] fabricated explanations for some of it,[9] and ignored the rest altogether,[10] concluding that the

---

[8] For example, Pringle's objections to the R&R claim that a government handwriting expert testified that his comparison of the signature of the alibi witness with a signature in a log book was "inconclusive." (Obj. to R&R, 7:15–16.) In fact, the expert had merely testified that though he found significant differences between the two signatures, he could not positively eliminate the alibi witness as the maker of the signature. (Lodgment 2 at 4; *see also* Lodgment 6, 520:1–6 (testifying the possibility that the two signatures were written by the same person was "remote" or "highly remote").) The appellate court also found it significant that the expert also pointed out the alibi witness's spelling of a name was different than the spelling that appeared in the log book. (Lodgment 2 at 4.) This was not an overstatement. While giving exemplars of her handwriting, the alibi witness didn't know the correct spelling of the name of a person she was visiting, insisting she always spelled it "Michel," because it sounded that way, but the person who had signed the log book months earlier had correctly spelled the name "Michael." (Lodgment 6:518:8–519:28.) The expert reiterated he found this to be a "significant difference." (*Id*.)

[9] In attempting to explain why he falsely told police he was in Fresno on the date of the crime, Pringle's briefing claims that the detective "contacted his Pringle's mother, who informed them that her son was confused and that he had actually returned from Fresno [earlier]." (Obj. to R&R, 6:6–8.) The appellate court found "Pringle's mother contradicted his story, saying he had returned from Fresno on January 4." (Lodgment 2 at 3.) The record shows no evidence at all that Pringle's mother said he was confused: the detective merely testified she told him Pringle returned from Fresno on January 4 (Lodgment 6, 222:21–223:25), and Pringle's mother said she didn't remember what she told him. (*Id*. 211:26–212:13.) It was Pringle himself who would later testify that didn't bother to remember dates and that he was confused. (*Id*., 426:16–428:26.)

[10] For example, the appellate court found Pringle told police his relatives and girlfriend would prove his alibi, but when the officer offered to telephone them and verify this, Pringle refused to give their names. (Lodgment 2 at 3,13.) The appellate court found this to be a "damaging admission" and that Pringle hadn't denied making it. (*Id*. at 13–14.) The

1  alibi was "verifiable." (Obj. to R&R, 15:16–17.) Even assuming the superior court's decision
2  was wrong, Pringle can't show it was based on an unreasonable determination of the facts
3  in light of the evidence presented to that court, and reasonable jurists wouldn't find this
4  debatable.

**Conclusion and Order**

For these reasons, the Court finds Pringle has failed to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Lambright*, 220 F.3d at 1025. The COA is **DENIED**.

**IT IS SO ORDERED**.

DATED: January 25, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

appellate court's decision found Pringle switched alibis at trial. (*Id*.) Pringle doesn't comment on the time gap between his Fresno alibi's being discredited and the presentation of his new alibi.

Pringle himself had testified that he told the detective he was in Fresno until mid-February. (Lodgment 6, 426:24–427:11.) He claimed to have been in Fresno from December 14 to around February 14. (Lodgment 6:221:2–19 (testimony of detective); 426:24–427:3 (testimony of Pringle, confirming his statement to the detective).) In fact he there for less than three weeks; he left for Fresno with his girlfriend on December 14, stayed about two weeks, and made a short return trip from December 31 to January 4. (Lodgment 6, 223:13–25 (testimony of detective); 211:2–26, 327:15–27 (testimony of Pringle's mother); 428:27–429:6 (testimony of Pringle).)